UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| VIVIAN PIEHL, | Case No. 21-11066 |
| Plaintiff, | Honorable Mark A. Goldsmith |
| v. | Magistrate Judge Elizabeth A. Stafford |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT [ECF NOS. 10, 12]**

Plaintiff Vivian Piehl appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 10; ECF No. 12. Piehl also replied to the Commissioner's motion, and the Commissioner filed a sur-reply. ECF No. 14; ECF No. 16. After review of the record, the Court finds that the administrative law judge's (ALJ)

decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 12, be **GRANTED**;

- Piehl's motion, ECF No. 10, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

### I.     Background

### A. Piehl's Background and Disability Application

Born in November 1966, Piehl was 51 years old when she applied for DIB and SSI in April 2019, with an alleged disability onset date of May 1, 2018.  ECF No. 8, PageID.48, 56.  She had past relevant work as an "assistant manager," "cashier," "home health aide," and "retail sales manager."  *Id.*, PageID.55-56.  Piehl claimed disability from a herniated disc, degenerative disc disease, knee injury, patellar bursitis, cervical lordosis, patellofemoral plica band syndrome, morbid obesity, migraines, osteoarthritis knee, complete lateral meniscectomy, degenerative joint disease of the left knee status-post tear, left knee arthroscopy, degenerative disc disease, disc bulging of the lumbar spine, cervicalgia, bilateral shoulder pain, and bilateral carpal tunnel syndrome. *Id.*, PageID.49-55, 87.

After a hearing, during which Piehl and a vocational expert (VE) testified, the ALJ found Piehl not disabled.  *Id.*, PageID.46-57, 64-85.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.*, PageID.32-34.  Piehl timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Piehl was not disabled.  At the first step, he found that Piehl had not engaged in substantial gainful activity since the alleged onset date of May 1, 2018. ECF No. 8, PageID.48.  At the second step, he found that Piehl had the severe impairments of degenerative joint disease of the left knee status-post tear and left knee arthroscopy, degenerative disc disease and disc bulging of the lumbar spine, cervicalgia, bilateral carpal tunnel syndrome, and obesity.  *Id.*, PageID.48-49.  Next, the ALJ concluded that none of Piehl's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.*, PageID.49.

4

Between the third and fourth steps, the ALJ found that Piehl had the

RFC to perform light work,[2] except

> the claimant can lift and/or carry 20 pounds occasionally and ten
> pounds frequently. She can stand and/or walk four hours and sit
> for six hours during an eight-hour workday. She can never climb
> ladders, ropes, or scaffolds. She can never crawl. The claimant
> can occasionally climb stairs and ramps, stoop, crouch, and
> kneel. She can frequently balance. She can frequently reach,
> handle, and finger. She can never tolerate exposure to extreme
> cold or vibration. The claimant can never work around hazards
> such as unprotected heights or uncovered, unguarded moving
> machinery.

*Id.*, PageID.49-50.  At step four, the ALJ found that Piehl cannot perform

any past relevant work as an "assistant manager," "cashier," "home health

aide," or "retail sales manager."  *Id.*, PageID.55-56.  At the final step, after

considering Piehl's age, education, work experience, RFC, and the

testimony of the VE, the ALJ determined that there were jobs in significant

numbers that Piehl could perform, including positions as garment sorter,

mail clerk, and router.  *Id.*, PageID.57.

---

[2] Light work is defined "as lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10 pounds….[A] job is
in this category when it requires a good deal of walking or standing…[and]
when it involves sitting most of the time but with some pushing and pulling
of arm-hand or leg-foot controls[.]"  Social Security Ruling (SSR) 83-10,
1983 WL 31251 (1983).

## II.    Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec*., 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Piehl argues that the ALJ erred by finding that she possessed an RFC for a limited range of light work.  ECF No. 10, PageID.1207.  She also argues that the weight given to the opinions of her treating physician, Joseph Yacisen, D.O., is not supported by substantial evidence.  *Id.*, PageID.1214.  The Court finds that the ALJ's decision is supported by

6

substantial evidence.  Thus, Piehl's challenge to the ALJ's decision should be rejected.

**B.**

Piehl asserts that the ALJ's RFC finding that she can stand or walk for only four hours a day conflicts with light work because she "lacks the ability to stand and walk for 6 hours out of an 8-hour workday" and she "must be able to perform ***substantially all*** of the exertional and nonexertional functions required in work at [the light work] level."  ECF No. 10, PageID.1208 (emphasis in original).  Piehl concludes that she "is only capable of, at most, sedentary work" and that the four-hour limitation found by the ALJ "is not compatible with the…definition of 'light work.'"  *Id.*, PageID.1214.  But Piehl's challenges are unsustainable.

If an individual cannot perform a prior job, the ALJ considers whether they can do sedentary, light, or medium work.  20 C.F.R. § 404.1520(a)(4)(iv)-(v).  The ALJ then takes the information and uses the Medical-Vocational Guidelines ("the grids") to account for factors—like age, education, and previous work experience—that determine whether the claimant can handle substantial gainful work.  *Id.*, Pt. 404, Subpt. P, Appx. 2.  But an individual sometimes falls between two "ranges of work," such as when they "can perform more than light but less than medium work."  *Id.*,

Pt. 404, Subpt. P, App. 2 § 200.00(d).  For individuals between ranges of work, "the grids provide all they can—general guidance—and an administrative law judge consults vocational experts with 'specialized knowledge' to make an informed decision about what jobs a claimant can do."  *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018) (citing SSR 83-12, 1983 WL 31253, at *2-3 (Feb. 26, 1979)); *see also Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) ("Where a claimant's RFC is between two exertional levels…a VE is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform.").

Here, the ALJ found that Piehl had the RFC to perform a limited range of light work.  ECF No. 8, PageID.49-50.  "[A] full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251 (1983).  And walking and standing in sedentary jobs "generally total no more than 2 hours" a day.  *Id.*  The ALJ found that Piehl could "stand and/or walk four hours and sit for six hours during an eight-hour workday."  ECF No. 8, PageID.49. The ALJ concluded that Piehl's RFC precluded her from performing any past relevant work.  *Id.*, PageID.55.

8

Because Piehl could stand or walk for four hours a day, she fell

between the requirements for all "light" work—six hours—and all

"sedentary" work—two hours.  *See* SSR 83-10; ECF No. 8, PageID.49-50.

She could do some light work, but not all.  The ALJ noted that "[w]hen a

claimant cannot perform substantially all of the exertional demands of work

at a given level of exertion and/or has nonexertional limitations, [the grids]

are used as a framework for decisionmaking."  *Id.*, PageID.56 (citing SSRs

83-12 and 83-14).  And he found that Piehl's "ability to perform all or

substantially all of the requirements of this [light] level of work has been

impeded by additional limitations."  *Id.*  Thus, consistent with the rules, the

ALJ consulted with the VE to determine "whether jobs exist in the national

economy for an individual with [Piehl's] age, education, work experience,

and [RFC]."  *Id.*, PageID.56-57.

The ALJ posed a hypothetical to the VE with restrictions accurately

reflecting his adopted RFC—including Piehl's four-hour limitation on

standing and walking.  *Id.*, PageID.82.  Given Piehl's age, education, work

experience, and RFC, the VE testified that jobs "exist[] in significant

numbers in the national economy" that Piehl could perform.  *Id.*,

PageID.82-83.  The VE provided three examples: a garment sorter (light

work, 55,000 jobs), a mail clerk (light work, 53,000 jobs), and a router (light

9

work, 50,000 jobs).  *Id.*, PageID.83.  Based on the VE's testimony, the ALJ

concluded that Piehl "is capable of making a successful adjustment to other

work that exists in significant numbers in the national economy" and that

"[a] finding of 'not disabled' is therefore appropriate."  *Id.*, PageID.57.

Because Piehl's impairments did not exactly match the grids, the ALJ

properly invited and relied on VE testimony to conclude that an RFC of a

limited range of light work led to a significant number of jobs that Piehl

could perform.  *See* SSR 83-12; *Anderson*, 406 F. App'x at 35 ("As long as

the VE's testimony is in response to an accurate hypothetical, the ALJ may

rely on the VE's testimony to find that the claimant is able to perform a

significant number of jobs.").  And case law in this circuit does not support

Piehl's contention that a four-hour limitation on walking or standing conflicts

with limited light work.  *Blackburn*, 748 F. App'x at 48-49 (rejecting plaintiff's

argument that the inability to stand or walk for six hours a day means that

she can do only sedentary work; the ALJ properly determined that

claimant's RFC with a four-hour limitation on walking and standing fell

between "light" and "sedentary" work and properly relied on VE testimony

to determine how many jobs claimant could perform); *Al-Khalili v. Colvin*,

No. 3:12-CV-00347, 2015 WL 509980, at *3 (M.D. Tenn. Feb. 6, 2015)

(finding that ALJ did not err in finding that a claimant limited to standing or

walking four hours in an eight-hour workday could perform a limited range

of light work); *Salata v. Comm'r of Soc. Sec.*, No. 1:20-CV-657, 2021 WL

795555, at \*7 (N.D. Ohio Mar. 2, 2021) (finding that ALJ did not err in

finding that claimant—limited to standing or walking four hours—could

"perform a reduced range of light work"; ALJ properly relied on VE's

testimony and report "to determine whether [claimant] could perform a

significant number of jobs in the national economy.").

Thus, the Court finds that the ALJ did not err in finding that Piehl had

an RFC for limited light work.

## C.

The Court also finds that substantial evidence supports the ALJ's

RFC finding.  Piehl argues that she "is not even capable of standing and

walking the 4 hours that the ALJ found," and she cites various medical

records to support her "limited ability to stand and walk."  ECF No. 10,

PageID.1209.  Piehl also contends that the ALJ's assessment of her RFC

failed to properly weigh the findings and restrictions of Dr. Yacisen, her

treating physician.  *Id.*, PageID.1215.

In addressing these arguments, the Court is mindful that it lacks the

authority to independently weigh the evidence.  *Hatmaker v. Comm'r of*

*Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may

not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.") (citations omitted).  In the same vein, "It is the ALJ's place, and not the reviewing court's, to 'resolve conflicts in evidence.'"  *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (quoting *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987)).

Piehl's arguments about how the ALJ weighed the evidence conflict with this Court's limited role.  ECF No. 10, PageID.1215-1219.  None of her arguments suggest that the ALJ abused his wide discretion.

## 1.

Citing her medical history, Piehl asserts that "evidence providing support for [her] limited ability to stand and walk is substantial."  ECF No. 10, PageID.1209.  But the Court finds that the ALJ's finding that Piehl could stand or walk for four hours in an eight-hour day is supported by substantial evidence.

To determine Piehl's RFC, the ALJ considered objective medical evidence and Piehl's subjective statements, detailed her medical history, and relied on several medical opinions.  ECF No. 8, PageID.50-55.  But the ALJ found that Piehl's "subjective allegations were not entirely consistent with the record as a whole."  *Id.*, PageID.53.  Piehl alleged that she had pain and swelling of the left knee, elevated her leg five times a day, used a cane, could only walk 100 feet and stand for 30 to 45 minutes, and had her left knee "give out" three to four times a day.  *Id.*, PageID.50, 53.

The ALJ found that Piehl's "medical record does not support her allegation[s]."  *Id.*, PageID.53.  He cited evidence showing that she has a knee brace that prevents her knee from buckling and that "she specifically denied falling."  *Id.*, PageID.53, 496, 509, 1085, 1180.  The ALJ also noted that "examination findings indicated [Piehl's] left knee was stable and retained full or almost full strength."  *Id.*, PageID.53, 425, 427, 496-497, 501, 507, 509-510, 514, 675, 1085-1086.  Citing Piehl's physical therapy notes and Dr. Yacisen's finding that an ambulatory device was not medically necessary, the ALJ determined that Piehl does not "require[] an assistive device for ambulation."  *Id.*, PageID.53, 1132.  The ALJ also found that, while Piehl experienced swelling of her left knee after surgery and iced her knee, Piehl's primary provider said that the "swelling was caused by the

13

consumption of excessive sodium." *Id.*, PageID.53, 639, 1180, 1183. And Piehl admitted that she still consumed a "fair amount of sodium." *Id.*, PageID.1180. Because of this cause of swelling and Dr. Yacisen's finding that she did not have to elevate her legs, the ALJ found that elevation was unnecessary. *Id.*, PageID.53, 55, 1132. Thus, the ALJ determined that the "objective medical evidence indicates [Piehl] does not experience the full extent of the symptoms and limitations she alleges she experiences." *Id.*, PageID.53.

The ALJ also evaluated medical opinions by state agency medical consultant Edward Brophy, D.O., and treating physician Dr. Yacisen. *Id.*, PageID.54-55. In a June 2019 report, Dr. Brophy opined that Piehl could stand and/or walk for a total of four hours, sit for about six hours in an eight-hour day, lift and/or carry 20 pounds occasionally and ten pounds frequently, occasionally push/pull with the bilateral lower extremities, occasionally climb ramps and stairs, and occasionally stoop, kneel, and crouch. *Id.*, PageID.54, 93-95. And Piehl could never climb ladders, ropes, or scaffolds, or crawl. *Id.*, PageID.94. The ALJ found the above limitations to be consistent with the record, and he incorporated them into the RFC. *Id.*, PageID.54.

After Piehl's surgery in January 2019, Dr. Yacisen's physical therapy notes stated that Piehl's work status had "modified" and "restricted" duties and that "Patient states she starts work on 2/11/19 with restrictions of no lifting/pushing more than 5#'s, no ladder climbing, pivoting with weight, squatting/kneeling; limited with stairs, bending, and twisting." *Id.*, PageID.522.  But the ALJ explained that this "opinion is not supported because the record is not clear who provided the restrictions." *Id.*, PageID.54.  The restrictions were not imposed by Dr. Yacisen or the physical therapist; they are restrictions that Piehl "stated" to the physical therapist. *See id.*, PageID.522, 526.  The ALJ also found that "in determining [Piehl's] long-term functioning, the opinion is not consistent with the medical evidence." *Id.*, PageID.54.  He reasoned that the opinion was unpersuasive because it "was written to reflect temporary, post-surgical restrictions" and that the "record does not show that [Piehl's] restrictions persisted." *Id.*, PageID.54-55.  Thus, the ALJ determined that the physical therapy notes opinion was not persuasive. *Id.*, PageID.55.

Lastly, the ALJ cited a June 2020 report by Dr. Yacisen. *Id.*, PageID.55.  In the physical medical source statement, Dr. Yacisen opined that Piehl could not walk more than one city block "without rest or severe pain" but could sit for at least six hours and stand/walk for less than 2

15

hours.  *Id.*, PageID.1130-1131.  The report also stated that Piehl requires a job that "permits shifting positions at will from sitting, standing or walking," but she need not elevate her legs, use an assistive ambulatory device, or take unscheduled breaks.  *Id.*, PageID.1132.  Piehl also could never twist, stoop, crouch, climb stairs, or climb ladders, and she would likely be off task 25% of the day due to pain.  *Id.*, PageID.1133-1134.  The ALJ cited all of these findings in his decision but found that portions of Dr. Yacisen's opinion were inconsistent with the record.  *Id.*, PageID.55.  While the medical record supported Dr. Yacisen's opinion that Piehl did not require unscheduled breaks, leg elevation, and use of an assistive device, the ALJ found that the report "identifie[d] limitations that exceed those indicated by objective findings," such as the prohibition on "engaging in most postural maneuvers" and "lift[ing] more than ten pounds."  *Id.*  Thus, the ALJ afforded partial weight to the opinion.  *Id.*

The ALJ properly considered the medical evidence, and the Court finds that substantial evidence supports his RFC determination that Piehl could stand or walk for four hours a day.  Piehl lists her medical history for the pain and swelling of her left knee and argues that substantial evidence supports her assertion that she "is only capable of, at most, sedentary work."  ECF No. 10, PageID.1214.  But the ALJ cited medical evidence to

16

counter Piehl's subjective complaints and considered the medical opinions

of Dr. Brophy and Dr. Yacisen to determine her RFC.  ECF No. 8,

PageID.50-55.  And the Court cannot "reweigh the evidence and substitute

its own judgment for that of the Commissioner merely because substantial

evidence exists in the record to support a different conclusion."  *Hatmaker*,

965 F. Supp. 2d at 930.  Because substantial evidence supports the RFC

finding, the ALJ did not err.

## 2.

Piehl also contends that the ALJ's assessment of her RFC failed to

properly weigh the findings and restrictions of Dr. Yacisen, her treating

physician.  ECF No. 10, PageID.1215.  She argues that the ALJ should

have "assigned more weight to [Dr. Yacisen's] restrictions" and that the ALJ

assigned partial weight to another of Dr. Yacisen's opinions, "despite it

being well supported by the evidence and consistent with the evidence."

*Id.*, PageID.1217-1218 (citing ECF No. 8, PageID.522, 1130-1135).  But

the Court cannot reweigh evidence.  *See Hatmaker*, 965 F. Supp. 2d at

930.

ALJs must assess the persuasiveness of all opinions from both

treating and non-treating sources by considering several factors, the most

important being the opinion's supportability and consistency with the record

17

evidence.  20 C.F.R. § 416.920c(a).[3]  Under the supportability factor, the

more relevant "objective medical evidence and supporting explanations

presented by a medical source to support his or her medical opinion," the

more persuasive the medical opinion will be.  20 C.F.R. § 416.920c(c)(1).

An opinion that is more consistent with the evidence from other medical

sources and nonmedical sources is also more persuasive.  20 C.F.R.

§ 416.920c(c)(2).

Piehl complains that the ALJ should have found that restrictions from

Dr. Yacisen's February 2019 physical therapy notes "were supported and

consistent with the medical evidence" and thus persuasive.  ECF No. 10,

PageID.1215 (citing ECF No. 8, PageID.522).  But as discussed, the ALJ

found that the notes were unpersuasive because it was "not clear who

provided the restrictions."  ECF No. 8, PageID.54.  Piehl also argues that

her symptoms "did persist following surgery," so "the ALJ should have

assigned more weight to these restrictions."  ECF No. 10, PageID.1217.

Piehl asserts that the February 2019 notes show that she "was doing poorly

---

[3] The treating physician rule, which required ALJs to give controlling weight to well-supported opinions of treating sources, does not apply here because Piehl applied for disability after March 27, 2017.  *See Wolfe v. Comm'r of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 n.4 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).

on that date" and that later records "note the presence of continued symptoms with respect to the left knee."  *Id.*  But the ALJ did consider that Piehl continued to complain of pain and swelling in her left knee after surgery, that "she had not experienced any symptomatic relief since the procedure," and that a steroid injection and later injections "failed to provide relief."  ECF No. 8, PageID.51.  And he found that her subjective complaints were "not entirely consistent with the record as a whole."  *Id.*, PageID.53.  The ALJ noted that "examination findings indicated [Piehl's] left knee was stable and retained full or almost full strength."  *Id.,* PageID.53, 425, 427, 496-497, 501, 507, 509-510, 514, 675, 1085-1086.  And after considering Piehl's subjective complaints and all medical opinions, the ALJ concluded that the "record does not show that [Piehl's] restrictions [from the February 2019 physical therapy notes] persisted."  *Id.*, PageID.54-55.  The ALJ's explanations for finding the physical therapy notes unpersuasive show that he did not abuse his wide discretion.

Piehl also argues that the ALJ erred by "only assign[ing] partial weight" to a June 2020 report by Dr. Yacisen.  ECF No. 10, PageID.1218.  But the Court must affirm the ALJ's decision if it is supported by substantial evidence, "even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.  "A key feature of the supportability

19

factor for persuasiveness is that with more relevant 'objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion…', the more persuasive the medical opinion will be." *Lapka v. Comm'r of Soc. Sec.*, No. 20-10035, 2021 WL 942752, at *15 (E.D. Mich. Jan. 4, 2021), *adopted*, 2021 WL 733234 (E.D. Mich. Feb. 25, 2021) (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Yacisen's physical medical source statement opines that Piehl cannot perform specific work functions, but nothing in the statement references objective medical evidence.  ECF No. 8, 1130-1135.  The opinion states that Piehl cannot perform specific work functions, but he does not support the findings.  *Lapka*, No. 20-10035, 2021 WL 942752, at *15 n.2 ("While the Doctor's opinions either note various diagnoses or opine that Plaintiff cannot perform any work functions, these items alone do not develop Plaintiff's case.").  And citing no other objective evidence, Piehl does not show objective medical evidence that supports Dr. Yacisen's opinion; she states only that her "left knee symptoms persisted well past her 2nd surgery with Dr. Yacisen."  ECF No. 10, PageID.1218.

Other medical evidence, like Dr. Brophy's report, showed that Piehl could walk or stand for four hours a day, lift and/or carry 20 pounds occasionally and ten pounds frequently, and occasionally climb ramps and

stairs, stoop, kneel, and crouch.  ECF No. 8, PageID.54, 93.  And even though Dr. Yacisen was Piehl's treating physician, the ALJ did not have to defer to his opinion.  20 C.F.R. § 416.920c(a); *Wolfe*, 2017 WL 6627044, at *7 n.4.

Piehl's other claims also lack merit.  Piehl argues that the ALJ did not address portions of Dr. Yacisen's opinion about a "sit/stand/walk option" and her ability to "only stand/walk a total of 2 hours out of an 8-hour workday."  ECF No. 10, PageID.1218.  But the regulations provide that the ALJ "will articulate how [he] considered the medical opinions or prior administrative medical findings from that medical source together in a *single analysis*…[He is] not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. § 404.1520c(b)(1) (emphasis added).  Thus, the ALJ did not have to discuss each medical opinion from Dr. Yacisen—one medical source.  The ALJ provided a source-level articulation of the medical opinions of Dr. Yacisen, and he ultimately relied on Dr. Brophy's findings about the standing and walking limitations.  ECF No. 8, PageID.54.

Because substantial evidence supports the ALJ's findings, the Court recommends that the decision be affirmed.

## III.    Conclusion

The Court **RECOMMENDS** that the Commissioner's motion, ECF No. 12, be **GRANTED**; that Piehl's motion, ECF No. 10, be **DENIED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: May 4, 2022

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2022.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager